UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHERMAN THOMAS,

              Petitioner,

vs.                             Case No. 3:17-cv-1271-J-39PDB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

              Respondents.

_____

## **ORDER**

### I.  **INTRODUCTION**

This cause is before the Court on a Petition for Writ of Habeas Corpus (Petition) (Doc. 1). Petitioner, Sherman Thomas, proceeding pro se, challenges his state court (Duval County) conviction for attempted murder in the first degree, armed burglary, and armed robbery. In their Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 10), Respondents address the four grounds raised in the Petition.[1] Petitioner filed a notice that he will rely on his Petition (Reply) (Doc. 13).

_____

[1] The Court will hereinafter refer to the exhibits in the Appendix (Doc. 10) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced.

## II.  EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).  A petitioner must make a specific factual proffer or proffer evidence that, if true, would provide entitlement to relief.  Jones, 834 F.3d at 1319 (citations omitted).  Conclusory allegations will not suffice.  Id.

In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Thus, the Court finds Petitioner is not entitled to an evidentiary hearing.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### III.  THE PETITION

The Petition is timely filed.  Response at 2-6.  In the Petition, Petitioner raises four grounds for habeas relief:  (1) the ineffective assistance of trial counsel for failure to call two defense witnesses, Shana and Rob; (2) the ineffective assistance of trial counsel for failure to file a motion to suppress the out-of-court identification made by Joshua Gerry and by Charlene Tipton; (3) the ineffective assistance of trial counsel for failure to object and move to exclude inadmissible bank documents; and, (4) the ineffective assistance of trial counsel for failure to object to the state's presentation of the false testimony of Mr. Gerry and Ms. Tipton.

Petitioner acknowledges he presents this Court with a mixed petition, but he asks that he be excused from exhausting his unexhausted grounds because he did not have counsel to advise him in his post-conviction proceeding.  Petition at 6-7.  See Martinez v. Ryan, 566 U.S. 1 (2012).

### IV.  HABEAS REVIEW

Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This Court recognizes its authority to award habeas corpus relief to state prisoners "is limited-by both statute and Supreme Court precedent."  Knight v. Fla. Dep't of Corr., 936 F.3d

1322, 1330 (11th Cir. 2019).  The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and limits a federal court's authority to award habeas relief.  See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").  Thus, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)."  Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019), petition for cert. filed, (U.S. Dec. 9, 2019) (No. 19-6918).

In Knight, the Eleventh Circuit explained:

> A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams [v. Taylor, 529 U.S. 362 (2000)] at 413, 120 S. Ct. 1495. A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the

4

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" Virginia v. LeBlanc, --- U.S. ----, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017)(quoting Woods v. Donald, --- U.S. ---, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015)); see also Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (explaining that "an unreasonable application is different from an incorrect one.").

Knight, 936 F.3d at 1330–31.

To obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir. 2019), cert. denied, 140 S. Ct. 394 (2019). Unless the petitioner shows the state-court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

The reviewing federal court must accept that a state court's finding of fact, whether a state trial court or appellate court,

is entitled to a presumption of correctness under 28 U.S.C. §
2254(e)(1). This presumption of correctness, however, applies
only to findings of fact, not mixed determinations of law and fact.
Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013)
(per curiam) (recognizing the distinction between a pure question
of fact from a mixed question of law and fact), cert. denied, 573
U.S. 906 (2014). Where there has been one reasoned state court
judgment rejecting a federal claim followed by an unexplained order
upholding that judgement, federal habeas courts employ a "look
through" presumption: "the federal court should 'look through' the
unexplained decision to the last related state-court decision that
does provide a relevant rationale. It should then presume that the
unexplained decision adopted the same reasoning." Wilson v.
Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Application of the AEDPA standard ensures that habeas corpus
is a guard against extreme malfunctions in the state criminal
justice systems, and not a mechanism for ordinary error correction.
Richter, 562 U.S. at 102-103 (citation and quotation marks
omitted). Consequently, state-court judgments will not easily be
set aside due to the applicability of the highly deferential AEDPA
standard that is intentionally difficult to meet. See Richter,
562 U.S. at 102. Although this high standard does not impose a

complete bar to issuing a writ, it severely limits those occasions

to those "where there is no possibility fairminded jurists could

disagree that the state court's decision conflicts" with Supreme

Court precedent.  Id.

## V.  EXHAUSTION AND PROCEDURAL DEFAULT

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. See,
> e.g., Coleman, supra, at 747-748, 111 S. Ct.
> 2546; Sykes, supra, at 84-85, 97 S. Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. ----, ----, 131 S. Ct.
> 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard
> v. Kindler, 558 U.S. ----, ----, 130 S. Ct.
> 612, 617-618, 175 L.Ed.2d 417 (2009). The
> doctrine barring procedurally defaulted
> claims from being heard is not without
> exceptions. A prisoner may obtain federal
> review of a defaulted claim by showing cause
> for the default and prejudice from a violation

> of federal law. See Coleman, 501 U.S., at 750,
> 111 S. Ct. 2546.

Martinez, 566 U.S. at 9-10.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To demonstrate cause, a petitioner must show that some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To demonstrate prejudice, a petitioner must show "there is at least

a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995). The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent. Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

## VI.  GROUNDS FOR RELIEF

### A.  Ground One

In ground one, Petitioner raises a claim of ineffective assistance of counsel for failure to call two defense witnesses, Shana and Rob.  Petition at 7.  He exhausted this claim by raising it in ground four of the amended and initial Rule 3.850 motions. Ex. M at 13-16, 75-78.

Initially, in addressing the post-conviction motion, the trial court set forth the Strickland v. Washington, 466 U.S. 668 (1984) standard.  Ex. M at 29-30.  Thus, to prevail on a Sixth Amendment claim, Petitioner must satisfy the two-pronged test set

forth in Strickland, 466 U.S. at 688, requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component). To obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense. To satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential one, requiring a most deferential review of counsel's decisions. Richter, 562 U.S. at 105. Not only is there the "Strickland mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision. Nance, 922 F.3d at 1303. Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And,

> for the reasons we have already discussed, it
> is rarer still for merit to be found in a claim
> that challenges a strategic decision of
> counsel.

Nance, 922 F.3d at 1303.

The court applied the Strickland standard and denied relief, finding Petitioner failed to satisfy the prejudice prong. Ex. M at 34. In doing so, the trial court first found Petitioner made a facially sufficient claim of failure to investigate and interview witnesses, but then denied the claim of ineffective assistance of counsel based on the following factors: (1) the security camera footage corroborated the co-defendant's testimony and directly refuted what Petitioner's claims Shana and Rob would have testified about as witnesses at trial, and (2) the content of the alleged testimonies of Shana and Rob (who were not allegedly present at the time of the commission of the offenses),[2] viewed alongside the other evidence presented at trial, including the eyewitness identifications made by Mr. Gerry and Ms. Tipton, provides no reasonable probability of a different outcome. Id.

The trial court denied the claim, and the First District Court of Appeal (1st DCA) affirmed per curiam without an opinion and

---

[2] The trial court found the footage viewed at trial did not show Shana, Rob, or Johnny Lee Warren in the Wal-Mart parking lot interacting with Petitioner and his co-defendant. Ex. M at 34.

explanation.  Ex. N.  The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.  Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

The Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u>, and the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.  Accordingly, ground one is due to be denied.

## B.  Ground Two

In ground two, Petitioner raises a claim of the ineffective assistance of trial counsel for failure to file a motion to suppress the out-of-court identification made by Joshua Gerry and by Charlene Tipton.  Petition at 14.  In this ground, Petitioner questions the witnesses' ability to make identifications as they were using drugs prior to, and right up to the day of the robbery. <u>Id</u>. at 16.  He also claims the victims, Mr. Gerry and Ms. Tipton, suffered extensive physical and/or emotional trauma during the robbery and were gravely affected by it, to the extent they were too traumatized to accurately remember what happened, bringing

into doubt their trial testimony. Id. at 15-16. Finally, Petitioner asserts his counsel was ineffective for failure to obtain an expert on mistaken eyewitness identifications to support the filing of a motion to suppress the out-of-court identifications. Id. at 18.

Petitioner raised similar grounds in his post-conviction motion, except he did not claim his counsel was ineffective for failure to obtain an expert on mistaken eyewitness identifications to support the filing of a motion to suppress out-of-court identifications. See Ex. M at 7-12, 69-74. Instead, he claimed his counsel was ineffective for failure to present an expert on the hallucinogenic effect of marijuana and an expert on the effect trauma can have on a victim's ability to identify perpetrators. Id.

As previously noted, the trial court referenced the Strickland standard before addressing Petitioner's claims. The court, assuming arguendo counsel's performance was deficient, found Petitioner failed to satisfy the prejudice prong of Strickland. Ex. M at 32. Without satisfying the prejudice component, Petitioner cannot prevail on his claim of ineffective assistance of counsel. The trial court explained that the witnesses had met Petitioner on multiple occasions prior to the

incident, thus increasing their ability to identify Petitioner, and both testified that the marijuana they consumed did not affect their ability to remember what happened, making it unlikely the jury would have given any weight to expert testimony speaking in generalities. Id. at 33.

Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. N. Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. Moreover, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, ground two is due to be denied.

To the extent Petitioner expanded the claim and adds a new claim not previously exhausted, asserting counsel was ineffective for failure to obtain the assistance of an expert on mistaken eyewitness identifications to support the filing of a motion to suppress out-of-court identifications, Respondents contend the

claim of ineffective assistance of counsel is unexhausted and procedurally defaulted. Response at 22-24.

Petitioner has failed to show cause, and he does not meet the prejudice or manifest injustice exceptions. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence gateway, Petitioner has not done so. The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Ala., 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In conclusion, the Court finds the additional claim raised in ground two is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, the court deems the additional claim raised in ground two procedurally defaulted, and Petitioner is procedurally barred from raising the unexhausted portion of ground two in this proceeding.

To the extent Petitioner claims his procedural default should be excused based on the narrow exception under <u>Martinez</u>, Petitioner must demonstrate the underlying ineffectiveness claim is substantial.[3]  Indeed, Petitioner must demonstrate the claim has some merit.  <u>Martinez</u>, 566 U.S. at 14.  In this instance, the underlying ineffectiveness claim raised in ground two lacks merit; therefore, Petitioner has not demonstrated he can satisfy an exception to the procedural bar.  To explain, the Court provides a merits analysis.

Petitioner asserts his defense counsel was ineffective for failure to obtain the assistance of an expert on mistaken eyewitness identifications to provide expertise and to help counsel demonstrate at a suppression hearing that the testimony of eyewitnesses tends to be distorted and unreliable, especially under the stressful and violent circumstances described in this attempted murder and robbery.  Petition at 19-20.

This Court is not convinced that counsel performed deficiently by failing to obtain an expert on mistaken identification to testify that the out-of-court identifications should be suppressed.  Indeed, the Court is not convinced that

---

[3]  The record demonstrates Petitioner did not have counsel for the filing of his post-conviction Rule 3.850 motion.  Ex. M.

this ground has some merit. Mr. Gerry, the shooting victim, identified Petitioner and his co-defendant, Youncher Washington, as the two perpetrators. Ex. C at 36-37. Mr. Gerry described Petitioner as having a lazy eye and two tattoos on his neck. Id. at 38. Petitioner and Mr. Washington were not strangers to Mr. Gerry, as Mr. Gerry had been purchasing drugs from the defendants for several months. Id. at 30-31. Ms. Tipton testified she got a good look at Petitioner and she knew him as Chris. Id. at 89-90, 93. Significantly, Petitioner's co-defendant, Mr. Youncher, took the stand and testified concerning Petitioner's participation in the crimes. Id. at 171, 176-77, 183-92.

As noted by Respondents, at best, an expert on mistaken identifications would have been able to give a general opinion about mistaken identifications or, as Petitioner puts it, the "tendency of [witnesses] yielding unreliable results" under stressful, violent, and various other conditions. Petition at 18. However, the expert would not be able to opine that these witnesses, Mr. Gerry and Ms. Tipton, were mistaken. Response at 28. The expert's testimony would go to weight, not admissibility, meaning there would be no basis to exclude the identification testimony of Mr. Gerry and Ms. Tipton and a motion to suppress would have been unsuccessful. Id. at 28-29. Therefore,

Petitioner's counsel's performance was not deficient for failing to acquire such an expert and file a motion to suppress relying on the expert's opinion.  As such, Petitioner's underlying claim does not have some merit.

Based on the above, Petitioner has failed to show he falls within the narrow parameters of the ruling in <u>Martinez</u>, in which the Supreme Court recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings.  As Petitioner failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground two.

### C.  Ground Three

In his third ground for post-conviction relief, Petitioner raises a claim of ineffective assistance of trial counsel for failure to object and move to exclude inadmissible bank documents. Petition at 23.  He contends his counsel's performance was deficient for failing to object to the admission of unauthenticated bank statements introduced during the trial.  Petitioner asserts that had counsel been successful in keeping out the unauthenticated

bank statements, this would have made the video surveillance of Petitioner and his co-defendant at Wal-Mart inadmissible because the surveillance footage would have been deemed irrelevant without the bank statements. Id. at 24.

Petitioner exhausted part of this claim, raising the claim that his counsel's performance was deficient for failure to object to the admission of the unauthenticated bank statements in the state court. Ex. M at 16-18, 78-80. The trial court, in denying this post-conviction claim, assumed arguendo counsel's performance was deficient for failing to object to the introduction of the victim's bank statements, but found Petitioner's alleged prejudice did not amount to the level of prejudice required under Strickland. Ex. M at 35. The court found the admission of the bank statements harmless as the unauthorized use of the bank card did not go to any element of proof for the offenses charged. Id. Moreover, even if the bank records were excluded, the co-defendant's testimony that the card used on the security camera footage was the victim's debit card would have been admissible.

The 1st DCA affirmed the decision of the trial court. Ex. N. The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable

determination of the facts and a reasonable application of the law.  Thus, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u>, and the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.  Thus, ground three is due to be denied.

To the extent Petitioner blames his failure to properly exhaust the new portion of ground three on the fact that he had no counsel to prepare his Rule 3.850 motion, the Court is not convinced that the remaining part of ground three has some merit. An explanation follows.

Even if counsel had objected and the bank statements had been excluded, the security footage from Wal-Mart would have remained relevant and admissible to corroborate Mr. Washington's and the victim's testimony concerning the taking of the debit card and Mr. Washington's testimony concerning the use of the debit card shortly after the commission of the crimes.  The taking of the debit card was certainly relevant to the charged crime of armed robbery.  Ex. A at 9.  The information charged Petitioner and his co-defendant with carrying a firearm and, by force, violence, assault, or putting in fear, taking the money or other property of Mr. Gerry

with the intent to permanently or temporarily deprive him of the money or other property, and during the commission of the offense, Petitioner possessed and discharged a firearm, inflicting great bodily harm upon Mr. Gerry. Id. The video footage revealed Petitioner and his co-defendant using the debit card, described by Mr. Washington as the victim's debit card, and this evidence is certainly relevant to prove or disprove a material fact. Fla. Stat. § 90.401. As such, Petitioner's unexhausted claim of ineffective assistance of counsel (part of ground three) is not substantial.

Petitioner has failed to show he falls within the narrow parameters of the ruling in Martinez. As he has failed to demonstrate that his underlying claim of ineffective assistance of counsel is a substantial one, he does not meet the narrow exception. Therefore, he has failed to establish cause for the procedural default of his unexhausted claim of ineffective assistance of trial counsel raised in ground three.

### D.  Ground Four

In his final claim for post-conviction relief, Petitioner raises a claim of ineffective assistance of trial counsel for failure to object to the state's presentation of the false testimony of Mr. Gerry and Ms. Tipton. Petition at 25.

Petitioner contends Mr. Gerry and Ms. Tipton presented false testimony that Mr. Gerry had been in a coma after being shot multiple times. Petitioner asserts the testimony was false because Mr. Gerry, as evidenced by the hospital records, was never in a coma, and, if counsel had objected, Petitioner would have been re-tried or at the very least, the testimony of Mr. Gerry and Ms. Tipton would have been properly impeached. Id. at 26-27.

Petitioner raised his claim of ineffective assistance of counsel in his post-conviction motion. Ex. M at 20-22, 82-84. He asserted, to perform effectively, counsel should have reviewed the medical records that showed Mr. Gerry was never in a coma, and armed with that information, counsel would have been prepared to recognize and object to the improper presentation of this testimony, relying on Giglio v. United States, 405 U.S. 150 (1972). Ex. M at 21. Further, Petitioner claimed the testimony about Mr. Gerry being in a coma was used to incite the emotions of the jury. Id. at 22.

The trial court, in denying this ground, assumed arguendo deficient performance, but found Petitioner did not meet the prejudice prong of Strickland. Ex. M at 38. The Court rejected the notion that this testimony resulted in the state developing a bias against Petitioner by gaining the jury's sympathy through

stressing Mr. Gerry's coma. Id. at 38. The court found that while being in a coma may reflect serious injury, it was obvious that Mr. Gerry suffered serious injuries as he was shot multiple times, including once in the neck, and he was left to die on the floor of his apartment. Id. The trial court concluded that any claim of a coma pales in comparison to the injuries Mr. Gerry suffered. Id.

Of import, the trial court found the issue of Mr. Gerry's claim to be in a coma was not left unchallenged by defense counsel. Id. at 39. Through effective cross examination, counsel questioned Mr. Gerry's contention he had not spoken with Ms. Tipton because he had been in a coma. Id. The court concluded, "the discussion of Joshua Gerry's coma had very little prejudicial effect, if any, and had counsel objected there is not a reasonable probability of a different outcome." Id.

The court set forth the Strickland standard before addressing this claim. The court rejected the claim, finding Petitioner did not satisfy the prejudice prong. The 1st DCA affirmed without an opinion and explanation. Ex. N. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the motion. The state has not attempted to rebut this presumption.

The Court concludes AEDPA deference is warranted. The record shows the 1st DCA affirmed the decision of the trial court, Ex. N, and the Court presumes the appellate court adjudicated the claim on its merits, as there is an absence of any indication of state-law procedural principles to the contrary. Since the last adjudication is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this endeavor. Thus, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, ground four is due to be denied.

Alternatively, based on the record, the Court is not convinced defense counsel's performance fell below an objective standard of reasonableness. Indeed, counsel's actions were well within the scope of permissible performance. The standard is reasonable performance, not perfection. Brewster, 913 F.3d at 1056 (citation omitted). In addition, Petitioner has failed to show resulting prejudice, the second prong of the Strickland standard. There is no reasonable probability that the outcome of the case would have been different if trial counsel had taken the action suggested by Petitioner.

24

The record demonstrates the following. Defense counsel effectively cross examined Mr. Gerry, pointing out he could not have been unconscious for eight days because he began undergoing physical therapy on July 12th. Defense counsel also effectively cross examined Ms. Tipton about her lack of memory and sudden ability to identify an assailant. On cross examination, Mr. Gerry testified he was unconscious for eight days.[4] Ex. C at 72. He said he and Ms. Tipton did not discuss much because he had tubes down his throat. Id. at 73. Ms. Tipton testified it took Mr. Gerry seven to eight days to regain consciousness after surgery. Id. at 98. Ms. Tipton said she was not able to have any communication with Mr. Gerry prior to the detectives coming on July 13, 2007. Id. at 104. Ms. Tipton testified Petitioner was conscious on July 13th, and she called the officers. Id. at 113.

In closing argument, defense counsel noted Mr. Gerry started physical therapy on July 12th; therefore, he was able to communicate on that date. Ex. E at 415. Counsel asked the jury to review the medical records to assess whether Mr. Gerry was unable to communicate until July 13th. Id. Defense counsel also pointed out that Ms. Tipton was able to speak with Mr. Gerry if he was undergoing physical therapy and communicating with staff. Id.

---

4 The shooting occurred on July 6, 2007. Ex. A at 9.

at 415-16.    Defense counsel also emphasized the change in Ms. Tipton's story, that she could suddenly identify an assailant on July 13th, but was unable to do so prior to that date.    Id. at 417.

Upon review, the medical records show Mr. Gerry was sent to the operating room for general surgery on July 6, 2007.    Ex. A at 45-46.    On July 9, 2007, a resident described Mr. Gerry as intubated and sedated.    Id. at 50.    On July 12th,[5] the physical therapist completed an inpatient evaluation/re-evaluation form and recorded the patient's goals were to get better.    Id. at 59.    The physical therapist noted Mr. Gerry had a chest tube on that date. Id.    On July 13th, Mr. Gerry participated in rehabilitation services.    Id. at 60.

Thus, the medical records show Mr. Gerry received surgery for very serious injuries, was intubated and sedated for some time, and as late as July 12th, still had a chest tube.    Based on the medical records, Mr. Gerry's ability to communicate during the week after surgery seemed severely limited by his medical condition and the measures used to treat him, but, apparently, he was able to communicate with medical staff on July 12, 2007.

---

[5] It is difficult to discern the date, but it appears to be July 12, 2007.

As noted previously, counsel performed effectively by cross examining these witnesses, bringing out the weaknesses in their testimony and highlighting any exaggeration of the duration of Petitioner's unconscious state. Also, defense counsel used closing argument to reinforce her points. As such, defense counsel's performance did not fall below an objective standard of reasonableness for failure to object to the testimony and for failure to use the medical records to impeach the witnesses.[6] In the alternative, any error in counsel's performance was not so great that it adversely affected the defense. Petitioner is not entitled to habeas relief on ground four.

Finally, the trial court rejected any notion that there was a Giglio violation that counsel failed to confront. Ex. M at 39. The court concluded that inconsistencies between a witness' recollection of events and documentation of those events is best

---

[6] To the extent Petitioner is attempting to raise a new claim (the ineffective assistance of counsel for failure to impeach the witnesses with the medical records), the claim is unexhausted and procedurally defaulted. Petitioner has failed to demonstrate cause and prejudice or that a fundamental miscarriage of justice will result if the claim is not addressed on its merits. Moreover, the claim does not have some merit. Martinez. "In light of all of the evidence presented at trial, further impeachment by noting a lack of reference to 'coma' in Gerry's medical records would have been inconsequential." Response at 42. Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is substantial; therefore, he has not overcome the default.

brought out on cross examination, exactly what was done by defense counsel in this case. Id. The court rejected Petitioner's contention the state knowingly presented false testimony. Id. The 1st DCA affirmed. Ex. N. The state court's decision is entitled to AEDPA deference, and Petitioner is not entitled to habeas relief as the state court's adjudication of the ineffectiveness claim is not contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. Ground four is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2. This action is **DISMISSED WITH PREJUDICE.**

3. The **Clerk** shall enter judgment accordingly and close this case.

4. If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability.** [7] Because this Court has determined that a

_____

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the

certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of February.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/12
c:
Sherman Thomas
Counsel of Record

---

constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.